UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| MELISSA DIANE ROULETTE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 3:14-CV-210 |
| ) | (VARLAN/GUYTON) |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 72(b) of the Federal Rules of Civil Procedure, and the Rules of this Court for a report and recommendation regarding disposition by the District Court of Plaintiff's Motion for Summary Judgment and Memorandum in Support [Docs. 14 & 15] and Defendant's Motion for Summary Judgment and Memorandum in Support [Docs. 16 & 17]. Plaintiff Melissa Diane Roulette seeks judicial review of the decision of the Administrative Law Judge ("ALJ"), the final decision of the Defendant Carolyn W. Colvin, Acting Commissioner of Social Security ("the Commissioner").

In November 2010, Plaintiff protectively filed an application for disability insurance benefits ("DIB") and supplemental security income ("SSI") with an alleged onset date of August 17, 2010. [Tr. 97-104, 124]. The Social Security Administration denied Plaintiff's application initially and upon reconsideration. [Tr. 44-51, 57-60]. Plaintiff timely filed a request for a hearing, and she appeared before Administrative Law Judge, George L. Evans, III, on September 24, 2012 in Knoxville, Tennessee. [Tr. 61, 25]. The ALJ issued an unfavorable decision on January 15, 2013. [Tr. 8-24]. Plaintiff filed her appeal of the decision, which the Appeals Council declined to review on March 24, 2014. [Tr. 5-7, 1-4].

Having exhausted her administrative remedies, Plaintiff filed a Complaint with this Court on May 22, 2014, seeking judicial review of the Commissioner's final decision under Section 205(g) of the Social Security Act. [Doc. 1]. The parties have filed competing dispositive motions, and this matter is now ripe for adjudication.

I.     ALJ FINDINGS

The ALJ made the following findings:

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2016.
>
> 2. The claimant has not engaged in substantial gainful activity since August 17, 2010, the alleged onset date (20 CFR 404.1571 *et seq.* and 416.971 *et seq.*).
>
> 3. The claimant has the following combined impairments: degenerative disc disease, osteoarthritis of the toes, obesity, depression, and anxiety (20 CFR 404.1520(c) and 416.920(c)).
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
>
> 5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform the full range of light work as defined in 20 CFR 404.1567(a) and 416.967(a).
>
> 6. The claimant is capable of performing past relevant work as a customer service representative. This work does not require the performance of work related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).
>
> 7. The claimant has not been under a disability, as defined in the Social Security Act, from August 17, 2010, through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).

[Tr. 13-20].

## II. DISABILITY ELIGIBILITY

This case involves an application for DIB and SSI benefits. An individual qualifies for DIB if he or she: (1) is insured for DIB; (2) has not reached the age of retirement; (3) has filed an application for DIB; and (4) is disabled. 42 U.S.C. § 423(a)(1). To qualify for SSI benefits, an individual must file an application and be an "eligible individual" as defined in the Act. 42 U.S.C. § 1382(a); 20 C.F.R. § 416.202. An individual is eligible for SSI benefits on the basis of financial need and either age, blindness, or disability. See 42 U.S.C. § 1382(a).

"Disability" is the inability "[t]o engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A).

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

1. If claimant is doing substantial gainful activity, he is not disabled.

2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his

3

> impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.
>
> 4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.
>
> 5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity ("RFC") and vocational factors (age, education, skills, etc.), he is not disabled.

Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520). Plaintiff bears the burden of proof at the first four steps. Id. at 529. The burden shifts to the Commissioner at step five. Id. At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform. Her v. Comm'r of Soc. Sec., 203 F.3d 388, 391 (6th Cir. 1999) (citing Bowen v. Yuckert, 482 U.S. 137, 146 (1987)).

## III. STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." Blakley v. Comm'r of Soc. Sec., 581 F.3d 399, 405 (6th Cir. 2009) (citing Key v. Callahan, 109 F.3d 270, 273 (6th Cir. 1997)). If the ALJ applied the correct legal standards and his findings are supported by substantial evidence in the record, his decision is conclusive and must be affirmed. Warner v. Comm'r of Soc. Sec., 375 F.3d 387, 390 (6th Cir. 2004); 42 U.S.C. § 405(g). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 241 (6th Cir. 2007)

(quotation omitted); see also Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison v. NLRB, 305 U.S. 197, 229 (1938)).

It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. Crisp v. Sec'y of Health & Human Servs., 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." Buxton v. Halter, 246 F.3d 762, 773 (6th Cir. 2001) (quoting Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986)). Therefore, the Court will not "try the case *de novo,* nor resolve conflicts in evidence, nor decide questions of credibility." Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

In addition to reviewing the ALJ's findings to determine whether they were supported by substantial evidence, the Court also reviews the ALJ's decision to determine whether it was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner. See Wilson v. Comm'r of Soc. Sec., 378 F.3d 541, 544 (6th Cir. 2004). The Court may, however, decline to reverse and remand the Commissioner's determination if it finds that the ALJ's procedural errors were harmless.

An ALJ's violation of the Social Security Administration's procedural rules is harmless and will not result in reversible error "absent a showing that the claimant has been prejudiced on the merits or deprived of substantial rights because of the [ALJ]'s procedural lapses." Wilson, 378 F.3d at 546-47. Thus, an ALJ's procedural error is harmless if his ultimate decision was supported by substantial evidence *and* the error did not deprive the claimant of an important benefit or safeguard. See Id. at 547.

On review, Plaintiff bears the burden of proving his entitlement to benefits. Boyes v. Sec'y. of Health & Human Servs., 46 F.3d 510, 512 (6th Cir. 1994) (citing Halsey v. Richardson, 441 F.2d 1230 (6th Cir. 1971)).

## IV. EVIDENCE

### A. *Medical Evidence*

Plaintiff protectively filed an application for DIB and SSI in November 2010 with an alleged onset date of August 17, 2010. [Tr. 97-104, 124]. Plaintiff was born on May 9, 1977 and completed the eleventh grade. [Tr. 124, 149]. She has past relevant work experience as a customer service representative, certified nursing assistant, and cashier. [Tr. 150]. Plaintiff reported that she ceased work due to conditions of bipolar disorder, learning problems, and ovarian cysts. [Tr. 149].

Plaintiff received treated from Peninsula Psychiatric Hospital ("Peninsula") from 2009 through 2011. [Tr. 225-34, 277-354, 548-608]. On August 12, 2010, Plaintiff was admitted "on an emergency commitment for treatment of depressed mood with suicidal ideation." [Tr. 228]. Plaintiff reported that she had "gone out drinking with friends and then had texted some friends that she was having suicidal thoughts. The patient states she had no intention on acting on this and feels that her friends overreacted." [Id.]. Plaintiff stated that she previously had prescriptions to anti-depressants, smoked marijuana infrequently, and imbibed alcohol once or twice a month. [Id.]. Plaintiff tested positive for cannabis the previous day at Fort Sanders Medical Center. [Id.]. She was diagnosed with depressive disorder, migraine headaches, polycystic ovarian disease, and a current GAF of 27. [Tr. 228-29]. Plaintiff was discharged on August 13, 2010 with a GAF score of 37-53. [Tr. 230-31]. Plaintiff continued therapy at Peninsula, and in October 2010, she requested a letter excusing her from work. [Tr. 321]. Nurse

6

Practitioner ("NP"), Tony Elkins, wrote a letter excusing Plaintiff from work for one month and scheduled a reevaluation for November 2010. [Id.]. NP Elkins assessed Plaintiff with a GAF of 55. [Tr. 323].

Plaintiff sought treatment at Fort Sanders Medical Center ("Fort Sanders") for various issues including depression, back pain, and abdominal pain. [Tr. 355-86, 424-39, 445-67, 723-32]. Plaintiff reported to Fort Sanders for suicidal ideation on August 11, 2010 before being admitted to Peninsula. [Tr. 374]. In December 2010, Plaintiff was diagnosed with chronic back and neck pain, and x-rays of Plaintiff's lumbar and cervical spine were negative and unremarkable. [Tr. 378-79]. Images of Plaintiff's lumbar spine showed "no evidence of fracture or bony abnormality." [Tr. 378]. Images of Plaintiff's cervical spine showed "no evidence of fracture. There is some mild reversal of cervical lordosis in the lower cervical region. This is probably due to muscle spasm or positioning." [Tr. 379]. On February 22, 2011, Plaintiff was diagnosed with clinical endometriosis and "had a total hysterectomy[.]" [Tr. 424].

Plaintiff received treatment from Prodigal Primary Care North ("Prodigal") from 2010 through 2012. [Tr. 609-36, 681-705]. On June 29, 2011, Plaintiff was seen by Physician Assistant ("PA"), Joe Braden, for depression, anxiety, and low back pain. [Tr. 614]. Plaintiff was diagnosed with "depression with some anxiety component[,]" and PA Braden noted that "she was on Zoloft and stopped, will try [W]ellbutrin." [Tr. 616]. A MRI of Plaintiff's cervical spine was performed on July 15, 2011, which revealed normal alignment. [Tr. 698]. A MRI of Plaintiff's brain, taken on September 6, 2011, was normal. [Tr. 699]. On September 9, 2011, a MRI of Plaintiff's lumbar spine revealed "[f]airly mild degenerative changes consisting of a mildly bulging L5-S1 disc along with some mild diffuse facet arthropathy." [Tr. 700]. On February 22, 2012, a MRI of Plaintiff's left foot showed "mild osteoarthritis of the

7

tarsometatarsal joints[,]" heel spurs, thickening of the plantar fascia, and "[f]atty atrophy of the abductor digiti minimi muscle." [Tr. 702]. Images of the right foot showed the same. [Tr. 703]. In March 2012, Plaintiff was treated for back, heel, and leg pain. [Tr. 682]. Plaintiff reported "constant, severe, sharp, dull, throbbing, aching, burning, and stabbing" pain in her Achilles' tendon and toes. [Id.]. She was assessed with plantar fasciitis, osteoarthritis in her ankles and feet, bronchitis, heel spurs, leg pain, low back pain, and anxiety. [Tr. 684].

Plaintiff began seeking treatment at Helen Ross McNabb Center ("McNabb") in 1996 for depression and anxiety. [Tr. 216-24]. She returned in 2011 and 2012. [Tr. 653-80]. On February 17, 2012, Plaintiff presented with "persistent depression, feels like she cannot function, mood labile, trouble caring for her children, easily irritable with others, neat, clean, cooperative, thoughts organized, no overt psychosis[.]" [Tr. 655]. Plaintiff reported that she did not feel capable of returning to work and Cheryl Daugherty, advanced practice nurse ("APN"), provided a medical excuse for "1 more month." [Id.]. APN Daugherty "[s]trongly encouraged her to seek [individual] therapy." [Id.]. Plaintiff was diagnosed with a Global Assessment of Functioning (GAF) of 43. [Id.].

Dr. Jodie Castellani conducted a psychological evaluation on February 4, 2011. [Tr. 387]. Plaintiff reported daily activities of shopping, caring for personal hygiene, preparing light meals, household chores, socializing with friends, taking her children to the park, watching television, sitting on the porch, listening to music, and playing with her dog. [Tr. 389-90]. She stated that a "bad day," which occurred approximately two to three times a week, consisted of staying in bed with feelings of hopelessness. [Tr. 390]. Dr. Castellani deferred her diagnosis and medical assessment because Plaintiff "was extremely difficult to interview. She was quite guarded and it took significant questioning just to obtain minimal information about her. She

8

gave vague allegations of psychotic process, gave an inconsistent history of substance abuse issues, and obtained a positive result on a screening test for malingered psychosis." [Tr. 391].

Dr. George T. Davis submitted a psychiatric assessment on February 21, 2011. [Tr. 395-407]. He diagnosed Plaintiff with mood and anxiety disorders that "does not significantly limit functioning." [Tr. 398, 400, 407]. Dr. Davis assessed Plaintiff with mild limitations in daily activities, social functioning, and maintaining concentration, persistence, and pace, with no episodes of decompensation of extended duration. [Tr. 405].

Dr. P. Stumb submitted a medical consultant analysis on April 4, 2011 and found that Plaintiff did not have any severe physical impairments. [Tr. 440-44]. Dr. Jayne Dubois submitted a psychological consultant analysis on July 1, 2011 affirming Dr. Davis's opinion. [Tr. 637]. Dr. Robert Blaine conducted a physical examination on September 27, 2011. [Tr. 642]. Dr. Blaine noted that Plaintiff had "a pleasant affect and appears to give reasonable effort to comply with the examination. She is well kempt . . . She has a cane that she uses if she is going to be walking for a prolonged time." [Tr. 643]. He diagnosed Plaintiff with a learning disability, ovarian cysts, and posttraumatic neck and back pain. [Tr. 644]. Dr. Blaine assessed that Plaintiff was "capable of handling her own affairs if approved for disability." [Id.]. Plaintiff's station, gait, tandem walk, heel and toe walk, and single-leg stand were normal, and she was able to squat one quarter of the way to the floor. [Id.].

*B. Other Evidence*

The ALJ conducted a hearing on September 24, 2012 in which the Plaintiff testified. [Tr. 25-43]. On January 15, 2013, the ALJ issued an unfavorable decision. [Tr. 8-24]. The ALJ considered Plaintiff's testimony, daily activities, medical records, history of suicidal ideations, treatment plans, history of alcohol and substance abuse, obesity, employment history, and

9

compliance with medication and examinations. [Tr. 14-19]. The ALJ considered the opinion evidence of record, noting that Plaintiff's "treating physicians have not indicated any functional limitations as to the claimant's impairment." [Tr. 19]. The ALJ went on to explain the weight assigned to Plaintiff's non-treating and non-examining physicians, accepting Drs. Blaine and Castellani's assessments and assigning some weight to the state agency non-examining consultants. [Id.].

## V. POSITIONS OF THE PARTIES

The Plaintiff argues that the ALJ erred in his RFC analysis by failing to consider Plaintiff's treating physician records and not according them adequate weight. The Commissioner responds that the ALJ's RFC is supported by substantial evidence and adheres to agency procedure. The Commissioner contends that the ALJ properly weighed the medical evidence and that the treating physician rule does not apply in this case due to the absence of a treating physician opinion.

## VI. ANALYSIS

The Court will address each of the issues presented by Plaintiff in turn.

### A. The Treating Physician Rule

The Plaintiff argues that the ALJ did not properly apply the treating physician rule to the McNabb and Peninsula treatment records. [Doc. 15 at 20-26]. She claims that the ALJ neglected these records entirely and failed to accord her treating physicians adequate weight. [Id.]. The Court disagrees. Under the Social Security Act and its implementing regulations, an ALJ will consider all the medical opinions in conjunction with any other relevant evidence received in order to determine a claimant's RFC. 20 C.F.R. § 404.1527(b). An ALJ will consider "every medical opinion" received and will give controlling weight to the opinions of

10

Case 3:14-cv-00210-TAV-HBG   Document 18   Filed 06/03/15   Page 10 of 18   PageID #: 848

treating physicians. See 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2) ("[i]f we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight."). Where an opinion does not garner controlling weight, the appropriate weight to be given an opinion will be determined based upon the following factors: length of treatment, frequency of examination, nature and extent of the treatment relationship, amount of relevant evidence that supports the opinion, the opinion's consistency with the record as a whole, the specialization of the source, and other factors which tend to support or contradict the opinion. 20 C.F.R. §§ 404.1527(c)(2-6) and 416.927(c)(2-6).

When an ALJ does not give a treating physician's opinion controlling weight, the ALJ must give "good reasons" for the weight given to a treating source's opinion in the decision. 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2). A decision denying benefits "must contain specific reasons for the weight given to the treating source's medical opinion, supported by evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for the weight." Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *5 (1996).

Nonetheless, although a treating physician's diagnosis is entitled to great weight, "the ultimate decision of disability rests with the administrative law judge." Walker v. Sec'y of Health & Human Servs., 980 F.2d 1066, 1070 (6th Cir. 1992) (citing King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). An ALJ does not measure medical evidence in a vacuum, but rather considers physician opinions in conjunction with the record as a whole. See 20 C.F.R. § 404.1527(b) (explaining that in considering medical opinions, the SSA "will always consider the

11

medical opinions in your case record together with the rest of the relevant evidence we receive."). The agency will consider such evidence as "statements or reports from you, your treating or nontreating source, and others about your medical history, diagnosis, prescribed treatment, daily activities, efforts to work, and any other evidence showing how your impairment(s) and any related symptoms affect your ability to work." 20 C.F.R. § 404.1529(a).

The treating physician rule is inapplicable where treating physicians have failed to provide medical opinions. If the record is replete with treatment records, but absent any medical opinion regarding functional capacity, treating physicians are not entitled to controlling weight, nor must the court address the factors set forth 20 CFR §§ 404.1527(c) and 416.927(c). See Terrell v. Comm'r of Soc. Sec., 12-CV-11781, 2013 WL 5178541, at *12 (E.D. Mich. Sept. 10, 2013) (explaining that where a plaintiff cannot cite to any treating physician opinion in the record that is contrary to the ALJ's decision "the undersigned cannot conclude that the ALJ erred in evaluating the record regarding these physicians."); see also Hazelwood v. Comm'r of Soc. Sec., 2012 WL 5930439, at *4 (S.D. Ohio Nov. 27, 2012) (finding that "w]ithout any opinion evidence from plaintiff's treating physicians, the Court cannot conclude that the ALJ erred by not applying the factors enumerated in §§ 404.1527(c) and 416.927(c)."); Pedigo v. Astrue, 1:09-CV-93, 2009 WL 6336228, at *6 (E.D. Tenn. Dec. 14, 2009) report and recommendation adopted, 1:09-CV-93, 2010 WL 1408427 (E.D. Tenn. Apr. 2, 2010) (explaining that the "rule of deference to a treating physician's opinion, however, is inapposite when the treating physician has not offered an opinion to which the ALJ can defer.") (citing White v. Comm'r of Soc. Sec., 572 F.3d 272, 286 (6th Cir. 2009).

In order to trigger the treating physician rule, the record must reflect more than just a diagnosis or evidence of a plaintiff's subjective complaints. Pedigo, 2009 WL 6336228, at *6

12

(requiring an actual opinion of functionality to invoke the treating physician rule "because disability is determined by reference to the functional limitations imposed by a condition, not the condition itself.") (citing Foster v. Bowen, 853 F.2d 483, 488–89 (6th Cir. 1988). The agency defines medical opinions as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 404.1527(a)(2).

Here, the Plaintiff argues that the ALJ failed to address her treating physician records from McNabb and Peninsula and erred in not applying the treating physician rule to her physicians' opinions. The Court disagrees.

The Court notes primarily that neither the McNabb nor Peninsula treatment records contain a treating physician opinion as to Plaintiff's functionality and the restrictions imposed by her impairments. Plaintiff specifically references Peninsula records from August 2010 that "contain a treating psychologist[']s opinion that Plaintiff[] suffers from marked dysfunction in her ability to perform activities of daily living; marked dysfunction in her ability to handle interpersonal relationships; marked dysfunction in her ability to concentrate; and marked dysfunction in her ability to adapt and change." [Doc. 15 at 22]; [see Tr. 286]. However, in reviewing the medical record, this report was submitted by Monica Ford, a licensed clinical social worker ("LCSW"), as part of Peninsula's "Narrative Record". [See Tr. 286]. As a LCSW, Ms. Ford is not an acceptable medical source triggering the treating physician rule.

Under the Social Security regulations, licensed clinical social workers are not considered "acceptable medical sources" that can provide evidence to establish the existence of a medically determinable impairment. See 20 C.F.R. §§ 404.1513(a), 416.913(a); Payne v. Comm'r of Soc.

13

Sec., 402 F. App'x 109, 119 (6th Cir. 2010) (stating that "social workers are not acceptable medical sources."). Pursuant to 20 C.F.R. § 404.1513(a), an acceptable medical source includes licensed physicians, licensed or certified psychologists, licensed optometrists, licensed podiatrists, and qualified speech-language pathologists. Because licensed clinical social workers are not included as an acceptable medical source, they are not entitled to controlling weight. See 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2) (explaining that "[m]edical opinions are statements from physicians and psychologists or other *acceptable* medical sources . . .") (emphasis added).

Further, the ALJ's lack of discussion or explanation of the weight assigned to Ms. Ford's reports was not in error. Although "other medical sources," such as opinions of licensed clinical social workers, are "important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file[,]" the regulations clearly state that the same factors in 20 C.F.R. §§ 404.1527(c) and 416.927(c) "*can be applied*" in determining the weight to be afforded to findings by other sources. Soc. Sec. Rul. 06-03p, 2006 WL 2329939, *3-4 (Aug. 9, 2006) (emphasis added). Even though an ALJ can consider the factors, Social Security Ruling 06-03p states that only "acceptable medical sources" can establish a medically determinable impairment, be considered treating sources entitled to controlling weight, and give medical opinions. Id. at *2. Therefore, Ms. Ford's "narrative reports" do not trigger the treating physician rule and the ALJ was under no obligation to directly address her treatment notes.

Plaintiff also argues that the McNabb and Peninsula GAF scores warrant consideration under 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2). [See Doc. 15 at 22-24]. The Court notes that a GAF score in and of itself is insufficient to constitute a medical opinion. See Oliver v. Comm'r of Soc. Sec., 415 F. App'x 681, 684 (6th Cir. 2011) ("A GAF score is thus not

14

dispositive of anything in and of itself, but rather only significant to the extent that it elucidates an individual's underlying mental issues.") (citing White v. Comm'r of Soc. Sec., 572 F.3d 272, 276 (6th Cir. 2009); Ackermann-Papp v. Comm'r of Soc. Sec., 1:06-CV-832, 2008 WL 314682, at *3 (W.D. Mich. Feb. 4, 2008) (finding that a GAF score alone, without a sufficient accompanying interpretative and explanatory narrative, may admit of several different interpretations.").

Although Plaintiff cites the Court to Administrative Message AM-13066 to show that a GAF opinion warrants controlling weight or "good reasons" for the weight assigned, [Doc. 15 at 24], the Plaintiff's own citation clearly states that a GAF score is "only a snapshot opinion about the level of functioning . . . Unless the clinician clearly explains the reason behind his or her GAF rating, and the period to which the rating applies, it does not provide a reliable longitudinal picture of the claimant's mental functioning for a disability analysis." Bryce v. Comm'r of Soc. Sec., No. 12-CV-14618, 2014 WL 1328277, at *10 (E.D. Mich. Mar. 28, 2014) (citing Nienaber v. Colvin, No. 13–1216, 2014 WL 910203, at *4 (W.D. Wash. Mar.7, 2014)); [see also Doc. 15 at 24].

The Peninsula GAF scores are from 2010 and reflect Plaintiff's GAF upon her brief hospitalization and subsequent therapy sessions. [Tr. 229-31, 529, 505]. The McNabb GAF scores are included in records from September 2011 through February 2012. [Tr. 655-77]. These records all reflect an abbreviated time frame, and they are included in Plaintiff's treatment records without any explanation for the "reason behind [the] GAF rating, and the period to which the rating applies[.]" Bryce, 2014 WL 1328277, at *10 (citing Nienaber, 2014 WL 910203, at *4). Without further explanation as to how Plaintiff's GAF scores represent her overall and

15

long-term functionality, these GAF scores do not reflect a "reliable longitudinal picture of the claimant's mental functioning[.]" Id.

Not only do these GAF scores not constitute treating physician opinions, the majority of GAF scores were assessed by non-acceptable medical sources. [See Tr. 505 & 529] (GAF score assigned by Tony Elkins, a nurse practitioner); [Tr. 655-77] (examination conducted by either a NP or LCSW); see also 20 C.F.R. §§ 404.1513(a), 404.1527(a)(2), 416.927(a)(2). Based on all of these factors, the Court find that Plaintiff's GAF scores do not constitute treating physician opinions warranting controlling weight or application of the factors set forth in 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2).

Finally, any argument that the ALJ failed to consider the Peninsula and McNabb records is incorrect. The ALJ specifically addressed Plaintiff's Peninsula treatment records, noting her treatment notes upon admission and discharge, Plaintiff's statements upon admission, and office visits subsequent to discharge. [See Tr. 16-17]. The ALJ went on to reference Plaintiff's treatment records from McNabb, specifically considering an examination from December 2011 in which Plaintiff's "primary care doctor had refused to issue any more work excuses, and Dr. Manning indicated a work excuse for no more than two more months (1F, 2F, 3F, 4F, 13F, 14F, 15F, 20F, 21F, and 22F)." [Tr. 17]. The ALJ's cited exhibits reference McNabb, Peninsula, and Prodigal treatment records. [See Tr. 23-24]. The ALJ also considered Plaintiff's MRI and diagnostic test results, included in the Prodigal and McNabb treatment records and cited as Exhibits 15F, 20F, and 21F. [See Tr. 17, 24]. Further, the ALJ weighed Plaintiff's own statements against her treatment records, noting that she reported an overdose in August 2010, but "[r]ecords, however, do not indicate an overdose, but rather that on August 11, 2010, the claimant was admitted for a psychological evaluation because of suicide ideation, but she

16

reported to the evaluator that she had no intention of suicide." [Tr. 18]. The ALJ considered that upon admission to Peninsula, Plaintiff was "alert and oriented to person, place, and time. Her mood was depressed and affect pleasant, but constricted. Lab work revealed that claimant testified positive for marijuana (Exhibits 2F, 4F, 7F, and 20F)." [Id.]. The cited exhibits correspond to Plaintiff's treatment records from Peninsula, McNabb, and Dr. Castellani's examination report. [See Tr. 23-24].

The Plaintiff is mistaken in alleging the ALJ never considered her treatment records. However, even if she was correct, such an error would be harmless. As explained above, a diagnosis is a far cry from a treating physician opinion of a plaintiff's functional capacity. See Pedigo, 2009 WL 6336228, at *6. Because the records are absent a treating physician opinion, agency regulations did not demand that the ALJ explain the weight assigned to the Peninsula and McNabb records or apply the factors set forth in 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2). The Sixth Circuit has made clear that the treating physician rule is inapplicable where no opinion of functionality exists. See id. Absent a treating physician opinion, the ALJ was under no obligation to explain the consideration of these records in his opinion. Although an ALJ must consider all medical opinions in conjunction with any other relevant evidence received in order to determine if a claimant is disabled, 20 C.F.R. § 404.1527(b), she need not specifically address each piece of evidence to adequately consider the record in its entirety. See Loral Def. Sys.-Akron v. N.L.R.B., 200 F.3d 436, 453 (6th Cir. 1999) ("the fact that the ALJ's opinion failed to discuss all of the testimony and evidence presented to him does not mean that the ALJ 'failed to consider' the evidence.") (quoting NLRB v. Beverly Enterprises-Massachusetts, 174 F.3d 13 (1st Cir. 1999)). The Court finds the Plaintiff's argument to be without merit. The ALJ did in fact include these records in his analysis, and it is irrelevant whether he explained the manner and

17

degree of his consideration. Agency regulations have no such requirement and neither shall this Court.

It matters not whether the Plaintiff, or even this Court, disagrees with the ALJ's analysis, or whether there is evidence in the record that supports a different finding. See Crisp, 790 F.2d at 453 n.4. The only questions before the Court are whether the ALJ adhered to agency procedure and formulated a RFC supported by substantial evidence. The Court finds in the affirmative as to both questions. The ALJ considered Plaintiff's treatment records as part of his analysis, and was under no obligation to apply the factors set forth in 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2). The Court finds that the ALJ's opinion and consideration of the medical evidence is supported by substantial evidence and compliant with agency regulations. Any argument to the contrary is without merit.

## VII. CONCLUSION

Based upon the foregoing, it is hereby **RECOMMENDED**[1] that Plaintiff's Motion For Summary Judgment **[Doc. 14]** be **DENIED**, and the Commissioner's Motion for Summary Judgment **[Doc. 16]** be **GRANTED.**

Respectfully submitted,

*Bruce Guyton*
United States Magistrate Judge

---

[1] Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Civ. P. 72(b)(2). Such objections must conform to the requirements of Rule 72(b), Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466 (1985). The district court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive or general. Mira v. Marshall, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. Smith v. Detroit Federation of Teachers, 829 F.2d 1370 (6th Cir. 1987).